IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CYNTHIA BURGETT,
                         Plaintiff,

v.                                                              Case No.  23-2173-JWB

HY-VEE, INC.,

                         Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on motions to exclude expert opinion testimony.  (Docs. 56, 57.)  The motions are fully briefed and ripe for decision.  (Docs. 60, 61, 62, 63, 64.)  Plaintiff's motion is GRANTED and Defendant's motion is GRANTED IN PART and DENIED IN PART for the reasons stated herein.

**I.      Background**

On November 30, 2022, Plaintiff was at the Hy-Vee Fast & Fresh convenience store in Prairie Village, Kansas, to purchase gas.  The gas station's fuel pump islands are shaped like an "H" and also referred to by the parties as a "dog bone" shape.  (Doc. 55 at 2.)  The fuel pump islands are elevated above the parking lot pavement.  While at Defendant's gas station, Plaintiff tripped over a fuel pump island and suffered serious injuries.  Plaintiff's alleged injuries are extensive and she asserts that she will need lifetime medical care as a result.  (*Id.* at 8.)

Plaintiff asserts a claim of negligence against Defendant.  Plaintiff contends that the fuel pump island was an unreasonably dangerous tripping hazard, that Defendant had knowledge or should have known that it was dangerous, that the design was not in accordance with industry standards, and it lacked safety features of Defendant's standard pump and the industry standards.

1

(*Id.* at 10.)  Both parties will present expert testimony at trial.  Plaintiff has identified two experts that will testify as to the dangerousness of the fuel pump island: Lila Laux, a human factors expert, and Albert Kerelis, a licensed architect.  Defendant has identified Richard Serignese as a non-retained expert to testify about the design and maintenance of fuel pumps.  The parties have filed motions to exclude the opinions of these experts.  The court will address each expert in turn.

## II.    Standard

Federal Rule of Evidence 702, which controls the admission of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under this rule, the district court must satisfy itself that the testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony. *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (*citing United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). The district court must first determine whether the witness is qualified by knowledge, skill, training, experience, or education to render an opinion. *Id.*  If so, the district court must determine whether the witness's opinion is reliable by assessing the underlying reasoning and methodology. *Id*. at 1283. The court is not required to admit opinion evidence that is "connected to existing data only by the ipse dixit of the expert," and

may exclude the opinion if "there is simply too great an analytical gap between the data and the opinion offered." *Id*. (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). But the rejection of expert testimony is the exception rather than the rule, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 596 (1993).

"The court has discretion to determine how to perform its gatekeeping function under *Daubert*." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig*., No. 17-MD-2785-DDC-TJJ, 2020 WL 1164869, at *3 (D. Kan. Mar. 10, 2020) (citing *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019)). The most common method of fulfilling that role is by conducting a *Daubert* hearing, "although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). In this instance, neither party has requested a *Daubert* hearing. Moreover, the nature of the opinions expressed, the relative completeness of the expert's report, and the materials cited lead the court to conclude that the motion can be decided without a *Daubert* hearing. *Ho v. Michelin N. Am., Inc*., 520 F. App'x 658, 664 (10th Cir. 2013) (district court permissibly exercised its discretion in ruling without a formal *Daubert* hearing).

## III.    Analysis

### A.  Lila Laux

Lila Laux has a doctorate in Industrial/Organizational Psychology with a specialization in Human Factors Engineering from Rice University. She has worked as a human factors engineer for more than 30 years. (Doc. 56-2 at 1.) Broadly speaking,

> a human factors analysis focuses on the interaction between human behavior and
> the design of a machine, product, or . . . a particular roadway. An expert engaging

in such an analysis will consider whether, in light of predictable human behavior,
the design or condition of the subject item poses a potential hazard.

*Mihailovich v. Laatsch*, 359 F.3d 892, 915 (7th Cir. 2004). Dr. Laux has testified as a human
factor expert in several cases. *See, e.g., Thompson v. Ford Motor Co.*, No. 22-CV-00541-MDB,
2023 WL 9422974, at *5 (D. Colo. Dec. 11, 2023). Defendant makes a cursory attempt to exclude
her testimony on the basis that she is not qualified. (Doc. 56 at 6.) Defendant argues that she is
not qualified to offer her opinions on how customers behave while walking around a fuel pump
because she is not an expert in civil or structural engineering, gas station design, gas station
maintenance, fuel pump island design, or fuel pump maintenance. A review of Dr. Laux's resume
shows that she has decades of experience on human factors and her opinions largely relate to how
individuals and Plaintiff would navigate the obstacle of the fuel pump and whether they would be
aware of the elevated fuel pump in their path based on her experience. (Doc. 61-1.) The court
finds that she is qualified to offer such opinions based on her education and experience.

Dr. Laux's opinions include the following: Plaintiff behaved how most people would
behave at a gas station; the fuel pump created a hazard because Plaintiff's attention was not
attracted to the "extended lobe in her path" and she was unlikely to see it; the extended lobe of the
fuel pump created an unexpected trip hazard that caused Plaintiff to trip; it is unreasonable to
expect that people walking between the store and the fuel pump would expect or detect the
unmarked and undifferentiated pump pedestal protruding into their path; and it was foreseeable
that customers could fail to detect the raised pedestal and trip as they walked to their vehicle. (Doc.
56-2 at 8–9.)

Defendant argues that these opinions would not assist the jury in understanding the
evidence or facts in this case because what ordinary people see in situations and how they
understand their surroundings are within the common understating of a juror. Defendant further

argues that this is not a case that necessitates a human factors expert because everyone has had experience with getting gas at a gas station. (Doc. 56 at 5.)  In response, Plaintiff argues that Dr. Laux will give the jurors a perspective about how "pedestrians typically navigate their surroundings," how the dog bone fuel pump island created a tripping hazard because "studies show people tend to look ahead in front of them while they walk." (Doc. 61 at 7.)

Rule 702 requires the court to determine whether an expert is needed to "assist the trier of fact." In determining whether Dr. Laux's testimony will be helpful, the court must assess whether the proposed testimony "is within the juror's common knowledge and experience." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014).  "Where expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact." *Sanderson v. Wy. Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020) (quoting *Thompson v. State Farm Fire & Cas. Co*., 34 F.3d 932, 941 (10th Cir. 1994)) (internal punctuation omitted).

Here, the court finds that Dr. Laux's opinions and testimony would not be helpful to the jury. Dr. Laux offers opinions regarding the types of customers that would go to a gas station, how customers would walk from the fuel pump to the convenience store, whether customers would expect to see or detect the raised fuel pump, and whether it was foreseeable that someone would trip on the raised fuel pump. Such opinions are not helpful here because the average juror has experience getting gas at a gas station. An average juror also has experience walking from a fuel pump to the convenience store to either pay for the gas or to go inside and purchase additional items. Further, an average juror is familiar with fuel pumps and how that area can include obstacles such as a trash can or other items. Moreover, there is video footage of the incident for the jurors to view and photos from which they can observe whether the raised fuel pump was detectable to

an average person.  While the court understands that a human factors expert may be helpful in explaining to a jury how a person may react to an obstacle or product in other situations that may be unique or in a setting that is unfamiliar to most individuals, it is not helpful here because all jurors would have common experience in operating a fuel pump especially in a community such as this one in which individuals do not typically use public transportation.  The jurors can understand the evidence at issue without Dr. Laux's opinions.

Plaintiff asserts that this court should reject Defendant's arguments about a juror's common knowledge and cites to *Miller v. CNH Indus. Am. LLC*, 645 F. Supp. 3d 1184 (D. Kan. 2022).  In that case, Judge Crouse rejected this argument, in part, because the expert's testimony was based on "human factors principles applied to a complex and powerful piece of machinery."  *Id.* at 1197. The testimony did not touch on the common knowledge of jurors "unless they [were] familiar with row-cropping agricultural implements."  *Id.* at 1198.  It is clear that a human factors expert's testimony may assist jurors in cases in which the factual issues are complex or the product at issue is complex.  *See id.*  However, in cases such as this, such testimony is not helpful.  "[J]urors are expected to possess sufficient practical knowledge of the world around them to understand the basic functions of walking and visual attention or inattention while walking, and do not require expert testimony to evaluate the credibility of Plaintiff's testimony and/or to apply the law to the facts presented to them."  *Ewers v. Lowe's Home Centers, LLC*, No. 1:18-CV-554, 2019 WL 4345684, at *3 (S.D. Ohio Sept. 12, 2019).

The court finds that Dr. Laux's opinions would not be helpful to the jurors in this case and are excluded.

**B.  Albert Kerelis**

Defendant moves to exclude Mr. Kerelis's opinions on the basis that he is not qualified to testify and that his opinions are not reliable. Mr. Kerelis is a licensed architect and will provide the following opinions at trial: 1) the edge of the fuel pump island was dangerous and caused Plaintiff to fall; 2) the edge of the fuel pump island was a low obstruction in a foreseeable pedestrian path that violated the standard of care for safe walkways; 3) the property owners should have known it was dangerous and provided warnings to pedestrians; 4) the failure to eliminate the hazardous condition or provide warnings was a violation of the standard of care for safe walkways and created the hazardous condition that caused Plaintiff's injury; and 5) the owner violated nationally recognized standards of care and the city's codes and ordinances. (Doc. 56-4 at 11.)

The court will first consider whether Mr. Kerelis is qualified to testify as to the matters in his report. Mr. Kerelis has a master's degree in architecture and is licensed in several jurisdictions, including Kansas. He has over 27 years' experience in architecture. For the past five years, Mr. Kerelis has worked for Robson Forensic providing expert analysis. He also continues to work as an architect for Facilities Design Group and has done so for twenty years by providing architectural services for residential, commercial, and industrial projects. This includes site analysis, code review, code compliance, schematic design, structural design, mechanical, electrical and fire suppression design. (Doc. 61-3 at 15.) He has designed hundreds of sites during his career that include designing parking lots, sidewalks, landscape islands and other elements around a building. In designing these elements, he ensures that the sites meet the required codes and are also safe for the users of the building and the site. (Doc. 61-4 at 165:2–166:13.) Mr. Kerelis testified that he previously designed a fuel island for a client in the late '90s or early 2000s. (*Id.* at 44:11–45:11.) His opinions in this case are based on his education, training, and experiences in the design and construction of paved surfaces, walkways, and site improvements in buildings and facilities.

Defendant asserts that Mr. Kerelis is not qualified to provide expert testimony on the fuel pump island because he has not prepared design drawings in the past five years, has not designed any projects in Kansas, and has not prepared a design with a fuel pump island in at least 15 years. (Doc. 56 at 7.)  Mr. Kerelis is a licensed architect with decades of experience who has designed hundreds of sites.  He testified extensively regarding his experiences in site design and the related considerations of safety for pedestrians and users of sites when designing sites.  Defendant's arguments go to the weight of his testimony rather than his qualifications.  *State Farm Fire & Cas. Co. v. Bell*, 30 F. Supp. 3d 1085, 1095 (D. Kan. 2014) (refusing to exclude an engineering expert with experience in safety research who was testifying about the dangerousness of the convenience store parking lot based on a lack of specific knowledge about convenience store parking lot designs) (citing *Utility Trailer Sales of Kan. City, Inc. v. MAC Trailer Mfg., Inc*., 267 F.R.D. 368, 371 (D. Kan. 2010) (refusing to exclude an expert witness's testimony based on his lack of specific experience in the trailer industry; rather, this was a subject "defendants may explore . . . on cross examination.")

Defendant also asserts that Mr. Kerelis' opinions are not based on sufficient facts or data. Essentially, Defendant argues that the expert's opinions are not reliable because he fails to cite any publications regarding the design and maintenance of fuel pump islands.  Defendant takes issue with Mr. Kerelis's reliance on several national publications which he has identified as standards of care in the industry because they are not publications regarding the design and maintenance of fuel pump islands.  Mr. Kerelis's opinions, however, clearly state that Defendant violated the standards of care regarding safe walkways and warnings regarding obstructions.  His expert report cites to various publications, including a publication by ASTM International, formerly the American Society for Testing and Materials (ASTM), which is a "globally recognized leader in

the development and delivery of professional consensus standards." (Doc. 61-3 at 7.)  In the report, Mr. Kerelis states that ASTM's publication, "Standard Practice for Safe Walking Surfaces, is a nationally recognized standard of care for the safe construction and maintenance of walkways to prevent pedestrian falls." (*Id.* at 10.)  That publication states that "in situations where a short flight stair or single step transition exists or cannot be avoided, obvious visual cues shall be provided to facilitate step identification." (*Id.*)  It also states that "Objects should not be placed which obstruct or protrude into a walkway in a manner that creates a tripping hazard. Objects in or protruding into walkways less than 3 ft high shall be made visually prominent." (*Id.*)  His report also cites to The Handbook of Warnings which states that a change in level of a walking surface that catches a pedestrian unaware needs to be made conspicuous to pedestrians by enhancing the contrast visibility of the step edge with the surroundings. (*Id.*)

Based on these standards of care and his experience, Mr. Kerelis opines that Defendant violated the industry standard by having a fuel pump island which protruded into the walkway and was not made visually prominent. (*Id.* at 11.)  Further, Mr. Kerelis opines that Defendant violated the City of Prairie Village's adopted codes and ordinances because it maintained a walkway which was not free from a hazardous condition.  (*Id.* at 12) (citing to the International Property Maintenance Code which has been adopted by the City).

Defendant's arguments that Mr. Kerelis fails to cite to publications on fuel pump islands are unpersuasive.  The standards cited by Mr. Kerelis relate to obstructions in a walkway and based on the facts in this case and the expert opinions, a jury could conclude that the fuel pump island extended into the walkway.  Therefore, the standards of care cited by Mr. Kerelis would apply to the fuel pump island insofar as it projected into the walkway.  Based on the evidence presented, the court finds that he is qualified to testify as to the matters set forth in his report.

### C. Richard Serignese

Defendant identified Richard Serignese as a non-retained expert that will "testify that the shape, size, color, and condition of the fuel pump island is within industry standards and that Hy-Vee did not violate any standard of care in regard to the maintenance of the fuel pump islands." (Doc. 57-1 at 1.)  Mr. Serignese is the Vice Presicent and General Manager of Simon Surfaces and will testify based on his "knowledge, education, training, and experience in the fuel island industry."  (*Id.* at 1–2.)  Plaintiff moves to exclude Mr. Serignese from offering expert opinion testimony on the basis that he is not qualified to offer these opinions.

Mr. Serignese has a degree in accounting and business administration.  (Doc. 57-2 at 6:25–7:4.)  He has never worked as an engineer or an architect and he has not designed or maintained a fuel pump island.  (*Id.* at 7:5–8:6.)  Simon Surfaces is a company that provides restoration and repair services to gas stations.  (*Id.* at 9:24–10:9.)  Mr. Serignese is responsible for sales and he oversees production and scheduling.  He follows up on the majority of leads that come into the business and then he determines what the customer needs and closes the sale.  (*Id.* at 8:7–9:12.)  He does not personally perform any work on the fuel pump islands and he does not design the repairs or restorations.  (*Id.* at 9:13–23.)  With respect to his opinions, Mr. Serignese testified that he actually doesn't "know the exact industry standard" for fuel pump island designs and that his "understanding has always been people pick what they want to pick.  It's a matter of preference. I don't know that – I don't know what the – anybody could tell you what the exact industry standard is." (*Id.* at 56:19–24.)  He then reiterated that he did not know the industry standard for fuel islands and admitted that he could not say that this particular design is or is not industry standard.  (*Id.* at 57:5–16.)  Further, when questioned about whether several chain gas stations around the country

use the dog bone shape fuel island as their standard design for fuel pump islands, he repeatedly testified that he did not know.  (*Id.* at 47:12–48:24.)

In response to Plaintiff's argument that Mr. Serignese is not qualified to opine regarding the industry standard for fuel pump islands, Defendant argues that Mr. Serignese is qualified based on his experience overseeing the industry and that this issue is for the jury.  Defendant argues that Mr. Serignese's inability to articulate an industry standard should not preclude him from testifying because his testimony is that he doesn't think there is an industry standard.  (Doc. 60 at 4.) Defendant, however, offered Mr. Serignese as an expert who will testify as to the industry standard and that Defendant's fuel pump island is within that standard.  Clearly, Mr., Serignese is not qualified to opine as to these issues and his deposition makes clear that he has no opinion on these issues.

Next, Defendant designated Mr. Serignese as an expert who will testify that Defendant met the standard of care for maintaining the fuel pump island.  His deposition testimony, however, makes clear that he has no expertise in this area.

> Q. Right.  So you've got no personal experience, specialized education, training, knowledge, or skill in maintaining or even commenting on the standard of care for a gas station to maintain their fuel pump islands; correct?
>
> A. Correct . . .

(*Id.* at 22:21–23:2.)

In response to the motion to exclude this testimony, Defendant makes no attempt to address Mr. Serignese's qualifications to opine regarding the standard of care for maintaining fuel pump islands.  Based on his testimony, he is not qualified to do so.

Plaintiff's motion to exclude Mr. Serignese's opinion testimony is granted.[1]

---

[1] Defendant asks that Mr. Serignese be allowed to testify as a fact witness due to his involvement with this specific pump island.  (Doc. 60 at 1, n.1.)  Plaintiff's motion was to exclude Mr. Serignese's opinion testimony.  Therefore,

**IV.    Conclusion**

Defendant's motion (Doc. 56) is GRANTED IN PART and DENIED IN PART.  Plaintiff's

motion (Doc. 57) is GRANTED.

IT IS SO ORDERED.  Dated this 1st day of November, 2024.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

---

unless Plaintiff moves to limit his fact testimony at a later date, this ruling does not preclude Defendant from calling Mr. Serignese as a fact witness.